

U.S. Department of Justice

United States Attorney
Eastern District of New York

FTB:GMR/RMS
F. #2022R00842

271 Cadman Plaza East
Brooklyn, New York 11201

April 3, 2024

<u>By Email and ECF</u>
The Honorable Lois Bloom
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: <u>United States v. Isaiah Dukes</u>
       <u>Case No. 24-CR-28 (NRM)</u>

Dear Chief Judge Bloom:

    Later today, the defendant Isaiah Dukes, also known as "Lil Zay Osama," will appear before Your Honor for arraignment upon the above-referenced indictment (the "Indictment"). The United States respectfully moves for a detention hearing pursuant to 18 U.S.C. § 3142(f)(1)(E) and submits that the defendant should be detained because he is a danger to the community and a flight risk, and no combination of conditions can mitigate these risks.

I. <u>Factual Background</u>

    On September 29, 2022, a rideshare driver (the "Driver") picked up the defendant and several associates at a hotel in New York, New York. As the defendant sat in the backseat of the vehicle, the Driver noticed that the defendant was holding a firearm, which was later identified as a loaded Glock model 22 .40 caliber pistol bearing serial number BTSD713, with a switch device affixed (the "Firearm").[1] After dropping off the defendant and his associates at a recording studio in Queens, New York, the Driver parked a short distance away and, while cleaning the backseat of his vehicle, observed that the defendant had left the Firearm in the vehicle in the area where the defendant had been siting during the ride. After law enforcement responded, the Driver identified the defendant as the individual who had been carrying the Firearm.

    Law enforcement subsequently examined and field-tested the Firearm, which indicated that the Firearm can automatically fire more than one round with a single function of the trigger. Law enforcement also determined that the Firearm contained one round in the chamber and nine rounds in the magazine.

---

[1] A "switch," also known as "auto sear," is a small device that when affixed to the back of a handgun converts the firearm into a fully automatic weapon.

## II. <u>Procedural Background</u>

Following his arrest on September 29, 2022, the defendant was charged by complaint based on the conduct described above. On November 23, 2022, the government, with the defendant's consent, moved to dismiss the case without prejudice, and the Honorable Robert M. Levy, United States Magistrate Judge for the Eastern District of New York, granted that motion. <u>See</u> 22-MJ-1059.

On January 24, 2024, a grand jury sitting in the Eastern District of New York returned the Indictment, which charges the defendant with possession of a machine gun, in violation of 18 U.S.C. § 992(o), and possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d).

## III. <u>Legal Standard</u>

Under the Bail Reform Act, 18 U.S.C. § 3141 <u>et seq.</u>, federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence, <u>United States v. Ferranti</u>, 66 F.3d 540, 542 (2d Cir. 1995), and risk of flight must be proven by a preponderance of the evidence, <u>United States v. Jackson</u>, 823 F.2d 4, 5 (2d Cir. 1987).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "the danger that the defendant might engage in criminal activity to the detriment of the community." <u>United States v. Millan</u>, 4 F.3d 1038, 1048 (2d Cir. 1993) (internal quotation marks omitted).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, including whether the offense involves a controlled substance or a firearm; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger posed by the defendant's release. <u>See</u> 18 U.S.C. § 3142(g).

The possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight. <u>See</u> <u>United States v. Khusanov</u>, 731 F. App'x 19, 21 (2d Cir. 2018) ("[A] district court does not clearly err in concluding that a defendant facing a potentially lengthy prison sentence possesses a strong motive to flee."); <u>United States v. Martir</u>, 782 F.2d 1141, 1147 (2d Cir. 1986) (explaining that the lengthy maximum combined term of imprisonment faced by the defendant "created potent incentives to flee"); <u>United States v. Dodge</u>, 846 F. Supp. 181, 184–85 (D. Conn. 1994) (explaining that the possibility of a "severe sentence" heightens the risk of flight); accord <u>United States v. Cisneros</u>, 328 F.3d 610, 618 (10th Cir. 2003) (finding that the defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); <u>United States v. Townsend</u>, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight.").

Evidentiary rules do not apply at detention hearings and the government is entitled to present evidence by way of proffer, among other means. See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130–31 (2d Cir. 2000). In the pre-trial context, few detention hearings involve live testimony or cross-examination; rather, most proceed on proffer. LaFontaine, 210 F.3d at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." Id. (internal quotation marks omitted); see also United States v. Mercedes, 254 F.3d 433, 437 (2d Cir. 2001) ("[The defendant] has twice been convicted of weapon possession—one felony conviction, and one misdemeanor conviction. We find the district court committed clear error in failing to credit the government's proffer with respect to [the defendant's] dangerousness.").

Where a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).

## IV. Discussion

Every § 3142(g) factor counsels heavily in favor of the defendant's detention. As outlined below, the government clearly establishes by clear and convincing evidence that the defendant poses a danger to the community based on his possession of a particularly dangerous firearm. Moreover, his criminal history and the overwhelming evidence of his guilt in the instant case all demonstrate by a preponderance of the evidence that the defendant poses a flight risk.

### 1. The Defendant's Danger to the Community

The crimes charged in this case are extremely serious and confirm that the defendant is a danger to the community. For one, the defendant possessed a particularly dangerous weapon that had been converted from a handgun capable of shooting just one bullet each time the trigger is squeezed to having the capability of firing constantly until the trigger is lifted. The only purpose of a switch device like the one affixed to the Firearm is to render a pistol into a machinegun—in other words, to make a deadly weapon all the more deadly.

Concerningly, the defendant's arrest in 2022 in connection with the previously dismissed complaint in this District evidently did nothing to deter the defendant from criminal conduct, including possession of such deadly weapons. On December 13, 2023, the defendant was arrested following a high-speed chase outside of Chicago, Illinois, after which police officers found a loaded Glock 29 with a laser, an extended magazine and a switch, and a loaded Glock 19 with a fifty-round drum magazine and a defaced serial number in the vehicle that the defendant had been driving. At the time of his arrest, the defendant was wearing a necklace alleged to be valued at approximately $90,000 and to be connected to an armed robbery in New York, New York. On December 15, 2023, the defendant was denied pre-trial release, and he has been detained in DuPage County, Illinois since his arrest.

Additionally, the defendant is facing pending charges in Wisconsin for carrying a handgun with a defaced serial number—<u>yet another</u> occasion on which the defendant is alleged to have unlawfully possessed a firearm.

**2.    The Defendant's Risk of Flight**

A.  <u>Defendant's History and Characteristics</u>

At just 26 years old, the defendant already has juvenile delinquent adjudications, a number of criminal convictions, and a pending case, as summarized below.

- In 2013, the defendant was adjudicated a juvenile delinquent in Illinois after being charged with aggravated discharge of a firearm.

- In 2014, the defendant was adjudicated a juvenile delinquent in Illinois after being charged with robbery, theft, aggravated battery, and battery.

- In 2017, the defendant appears to have been convicted of "Resist Peace Officer" in Illinois and sentenced to 2 days of incarceration.[2]

- In 2019, the defendant was convicted in Illinois of criminal trespass to land (misdemeanor) and sentenced to five days of incarceration.

- In 2022, the defendant was convicted in Illinois of unlawful possession of a firearm (misdemeanor) and sentenced to one day of incarceration.

- In 2023, the defendant was convicted in California with evading a peace officer (felony).  He was sentenced to time served and two years of probation.

- In 2023, as described above, the defendant was charged with possession of a loaded machine gun, theft of stolen goods exceeding $10,000 but not more than $100,000, and possession of a firearm with a defaced serial number.  That case is pending.

These cases—many of which involve firearms and the trajectory of which suggest a dangerous escalation—demonstrate that the defendant has little regard for the law.

Moreover, the defendant has demonstrated that he is a risk of flight precisely because he already has shown a disregard for court orders.  There currently are two outstanding warrants for his arrest, issued by two different jurisdictions.  One of these warrants relates to the

---

[2]    The defendant's criminal history record from Illinois and the investigation conducted by Pretrial Services following his arrest in September 2022 are inconclusive as to whether the defendant was convicted of a crime.  The records note a sentence, but not a conviction.

defendant's failure to appear in Wisconsin for charges that include carrying a concealed weapon, discussed above.

### B. Weight of the Evidence

There is significant evidence of the defendant's commission of the charged offenses. For example, an eyewitness positively identified the defendant as the individual who had been carrying the Firearm, and DNA analysis subsequently indicated that the defendant was a contributor to the sample taken from the Firearm.

Where, as here, the evidence of guilt is strong, it provides "a considerable incentive to flee." United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993); accord United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (explaining that where "the evidence against defendants is strong, the incentive for relocation is increased").

## V. Conclusion

For the foregoing reasons, the United States respectfully requests that the Court issue a permanent order of detention against the defendant.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     /s/
Gilbert M. Rein
Rebecca M. Schuman
Assistant U.S. Attorney
(718) 254-7202

cc:    Clerk of Court (by ECF)
       Defense Counsel (by ECF)