

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RTP:GMR/RMS
F. #2022R00842

*271 Cadman Plaza East Brooklyn,*
*New York 11201*

October 30, 2024

By ECF

The Honorable Nina R. Morrison
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Isaiah Dukes
               Docket No. 24-CR-28 (NRM)

Dear Judge Morrison:

      The government respectfully submits this letter in advance of the sentencing hearing of the defendant Isaiah Dukes, which is scheduled for November 7, 2024. For the reasons stated below, the government requests that the Court impose a term of imprisonment at the top end of the applicable United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") range of 21 to 27 months, followed by a term of supervised release. Such a sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing set forth at 18 U.S.C. § 3553(a).

I.   Background

    A.  Offense Conduct

      On September 29, 2022, Dukes and several associates requested a rideshare vehicle to take them from a hotel in Manhattan to a recording studio in Queens. Presentence Investigation Report dated October 23, 2024 ("PSR"), ¶ 5. When the vehicle arrived, Dukes entered the vehicle, sat in the backseat directly behind the driver and placed his feet up on the center armrest, next to the driver. Id. Dukes' leg was positioned in a way which caused it to dig into the driver's back. Id. During the trip, the driver turned his head to confront Dukes and saw that Dukes was holding a firearm. Id. After seeing the firearm, the driver avoided additional confrontation with Dukes and dropped off Dukes and his associates at the recording studio. Id. Dukes and other passengers wanted the driver to take them to another location, but the driver refused, telling them that the trip had ended. Id. The driver then drove away from the recording studio and called the rideshare to report what had occurred. Id.

After leaving the recording studio, the driver parked nearby and began to clean his vehicle of the mess left by Dukes and his associates. Id.  At that time, the driver saw the firearm Dukes had been holding on the floor near the seat where Dukes had been sitting during the ride. Id.  The driver called 911, and New York City Police Department ("NYPD") officers responded. Id. ¶¶ 5–6.  The NYPD officers then accompanied the driver to the recording studio where the driver had dropped off Dukes and his associates, and the driver identified Dukes as the individual who had been carrying the firearm. Id. ¶ 6.  The NYPD officers then placed Dukes under arrest. Id.

Following its recovery by the NYPD, Dukes' firearm was examined and tested. Id. ¶ 7.  Investigators observed that the firearm, a Glock model 22 .40 caliber pistol loaded with ten rounds, had a switch device attached to it and, upon testing the firearm, confirmed that the switch device enabled the weapon to expel multiple bullets with a single pull of the trigger.  Id.

The firearm subsequently was examined for DNA evidence. Id. ¶ 9.  That analysis established that Dukes was one of the contributors to the DNA mixture found on the firearm. Id.

B. Procedural History

Following his arrest on September 29, 2022, Dukes was charged by complaint (the "Complaint") based on the conduct described above.  ECF No. 1.  At his initial appearance on September 30, 2022, the Honorable Ramon E. Reyes, Jr., then-United States Magistrate Judge, entered a permanent order of detention against Dukes.  ECF No. 5.  On October 28, 2022, Dukes was released on bond in the amount of $350,000.  Oct. 28, 2022 Dkt. Entry.

On November 23, 2022, the government, with Dukes' consent, moved to dismiss the Complaint without prejudice, ECF No. 12, and the Honorable Robert M. Levy, United States Magistrate Judge, granted that motion, Nov. 23, 2022 Dkt. Entry.[1]

On January 24, 2024, a grand jury sitting in the Eastern District of New York returned a two-count indictment (the "Indictment") charging Dukes with possession of a machine gun, in violation of 18 U.S.C. § 992(o), and possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d).

Following Dukes' in-custody transfer to the Eastern District of New York and subsequent arraignment on April 3, 2023, the Honorable Lois Bloom, United States Magistrate Judge, entered a permanent order of detention against Dukes.  ECF Nos. 20–21.

On May 30, 2024, Dukes pled guilty, pursuant to a plea agreement (the "Plea Agreement"), to possession of a machine gun before the Honorable Taryn A. Merkl, United

---

[1] Following the dismissal of the Complaint, the government's ongoing investigation determined that Dukes was a contributor to the DNA sample taken from the firearm, see ECF No. 19, at 5, as discussed above.

2

States Magistrate Judge. May 30, 2024 Dkt. Entry. This Court accepted Dukes' guilty plea on June 10, 2024. June 10, 2024 Dkt. Entry.

On August 30, 2024, the Court granted the government's motion and ordered forfeiture of the firearm and ammunition seized by law enforcement in connection with the offense of conviction. ECF No. 29.

### C. Criminal History

At 27 years old, Dukes already has several juvenile delinquent adjudications and criminal convictions, as summarized below.

- In 2013, Dukes was adjudicated a juvenile delinquent in Illinois after being charged with robbery and aggravated discharge of a firearm. PSR ¶ 24.

- In 2014, Dukes was adjudicated a juvenile delinquent in Illinois after being charged with robbery, theft, aggravated battery, and battery. Id. ¶ 25. The underlying conduct involved an incident in which Dukes struck another person in the face during a robbery, causing the victim to crash his motorbike into a tree. Id. Dukes also stole the victim's cellular telephone. Id.

- In 2017, Dukes was convicted of "Resist Peace Officer" (misdemeanor) in Illinois and sentenced to two days of incarceration. Id. ¶ 26. In that case, Dukes, who was a passenger in a car stopped for a traffic violation, repeatedly disobeyed orders from police officers. Id.

- In 2019, Dukes was convicted in Illinois of criminal trespass to land (misdemeanor) and sentenced to five days of incarceration. Id. ¶ 27.

- In 2022, Dukes was convicted in Illinois of unlawful possession of a firearm (misdemeanor) and sentenced to one day of incarceration. Id. ¶ 28. In that case, he was a passenger in a car which evaded police officers trying to stop it for a traffic infraction. Id. After the officers ended their pursuit, the car collided with another vehicle. Id. Dukes was arrested after fleeing, and police officers found two firearms in the car. Id.

- In 2023, Dukes was convicted in California of evading a peace officer (felony). Id. ¶ 29. He was sentenced to one day in custody and two years of probation. Id. Dukes' term of probation is set to expire in April 2025. Id.

In addition to the multiple juvenile adjudications and criminal convictions described above, Dukes has been arrested on over 20 separate occasions beginning at age 11. Id. ¶¶ 34–61. These arrests stem from a vast array of criminal conduct, including property damage, theft-related offenses, trespass, firearms possession, assault and battery. Id.

Additionally, in Illinois in 2023, he was charged with possession of a loaded machine gun, theft of stolen goods exceeding $10,000 but not more than $100,000, and possession of a firearm with a defaced serial number. Addendum to Presentence Investigation Report dated October 30, 2024, 1–3. That case is pending. Id. at 1.

There also are two active warrants for Dukes' arrest, one in Georgia in connection with a battery case and one in Wisconsin in connection with a firearms case. Id.

II.     Applicable Law

The Supreme Court has explained that "a district court should begin all sentencing proceedings by correctly calculating the applicable the United States Sentencing Guidelines (the "Guidelines") range. Gall v. United States, 552 U.S. 38, 49 (2007). Though advisory, see United States v. Booker, 543 U.S. 220, 264 (2005), the Guidelines nonetheless are "the starting point and the initial benchmark," Gall, 552 U.S. at 49; see also Molina-Martinez v. United States, 578 U.S. 189, 198–99 (2016) (explaining that "[t]he Guidelines are the framework for sentencing and anchor the district court's discretion" (alternation and internal quotation marks omitted)).

After calculating the applicable Guidelines range, the court must consider the factors outlined in § 3553(a), see Gall, 552 U.S. at 49, and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing," United States v. Cavera, 550 F.3d 180, 188 (2d Cir. 2008) (citing 18 U.S.C. § 3553(a)(2)). Section 3553(a) directs the court "in determining the particular sentence to impose" to evaluate: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. "[I]n the ordinary case, the [U.S. Sentencing] Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." Kimbrough v. United States, 552 U.S. 85, 109 (2007) (internal quotation marks omitted); see also United States v. Rueda-Zarate, 291 F. App'x 364, 366 (2d Cir. 2008) ("A Guidelines sentence will in the ordinary case 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" (quoting Kimbrough, 552 U.S. at 109)); United States v. Fernandez, 443 F.3d 19, 27 (2d Cir. 2006) ("[I]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances."). That is because "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives, the one, at retail, the other at wholesale." Rita v. United States, 551 U.S. 338, 348 (2007).

At sentencing, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

4

III.    Discussion

    A.    The Guidelines Calculation

As an initial matter, see Gall, 552 U.S. at 49; Molina-Martinez, 578 U.S. at 198–99, the government submits that the Guidelines calculation contained in both the PSR and the Plea Agreement is accurate, resulting in a Total Offense Level of 15, see PSR ¶¶ 14–23; Plea Agmt. ¶ 2. Because Dukes falls in Criminal History Category II, see PSR ¶ 31, the resulting Guidelines range is 21 to 27 months' imprisonment, see id. ¶ 99. Pursuant to the Plea Agreement, Dukes has stipulated to this calculation and agreed not to appeal or otherwise challenge his conviction and sentence in the event the Court imposes a term of imprisonment of 30 months or below. Plea Agmt. ¶¶ 2, 4.

    B.    The § 3553(a) Factors Demand a Significant Term of Imprisonment

The government respectfully requests that the Court impose a term of imprisonment of 27 months. The government submits that such a sentence is sufficient, but not greater than necessary to achieve the purpose of sentencing as specified in § 3553(a). Among other factors, a sentence within the Guidelines range is necessary to recognize the serious nature of the offense, promote respect for the law, and to deter future criminal conduct. Any variant sentence will fail to adequately achieve these important objectives.

        1.    The Nature and Circumstances of the Offense

The nature and circumstances of Dukes' conduct require a substantial incarceratory sentence. See 18 U.S.C. § 3553(a)(1). He knowingly possessed a particularly dangerous weapon that had been converted from a handgun capable of shooting just one bullet each time the trigger is squeezed to having the capability of firing constantly until the trigger is lifted. While Dukes seems to suggest that he illegally carried a Glock with a switch for personal protection, see ECF No. 33 ("Def. Mem.") 14 (noting "that musical artists are often targeted due to their status and perceived wealth"), and seeks to justify his crime on that basis, this excuse rings hollow in that he chose to carry a fully automatic weapon. The only purpose of a switch device like the one affixed to his firearm is to render a pistol into a machinegun—in other words, to make a deadly weapon all the more deadly.

Dukes' attempt to minimize the gravity of his offense is jarring. See, e.g., id. at 14–15. As someone with prior criminal convictions for illegal firearms possession, he should have known better than to once again possess an illegal gun. Justifying his possession of a machinegun based on a recent homicide of another rap artist seemingly unrelated in any way to Dukes is as curious as it is unacceptable. Individuals in danger should contact law enforcement or engage the services of professionals trained to counter violent threats. Arming oneself with an illegal deadly weapon, particularly one capable of delivering a hail of bullets with a single trigger pull, is not an acceptable response under these circumstances. Dukes' proffering of an excuse for his conduct undermines genuine acceptance of responsibility for his actions. On the contrary, the behavior in which he engaged serves to drive violent crime and endanger our community.

Dukes not only possessed this lethal weapon but also recklessly left it in a rideshare vehicle where it easily could have accidentally discharged or been picked up by another passenger, including a child. That no one was in fact injured as a result of Dukes' dangerous actions does not minimize the seriousness of his conduct; our community simply got lucky that no bullets were fired that night. Indeed, the harm inflicted by illegal firearms cannot be understated. In 2022 alone, over 1,000 deaths were caused by firearms. See "Firearm Mortality by State," Center for Disease Control and Prevention, available at https://www.cdc.gov/nchs/pressroom/sosmap/firearm_mortality/firearm.htm (last visited Sep. 5, 2024). As the Honorable Reena Raggi, United States Circuit Judge, previously observed, a "significant number of New Yorkers, many of them children, . . . are regularly injured by random gunfire." United States v. Cavera, 550 F.3d 180, 207–08 (2d Cir. 2008) (en banc) (Raggi, J., concurring).

### 2. Dukes' History and Characteristics

Dukes' conduct in this case is by no means an aberration. His history and characteristics, therefore, further confirm that a significant term of imprisonment is warranted. See 18 U.S.C. § 3553(a)(1).

As noted above, Dukes has committed a number of crimes across the country even before the conduct to which he admitted here. These cases—many of which involve firearms and the trajectory of which suggest a dangerous escalation—demonstrate that he is dangerous and that he has little regard for the law. Concerningly, his arrest in 2022 in connection with the Complaint evidently did nothing to change his ways. On December 13, 2023, Dukes was arrested following a high-speed chase in Illinois, after which police officers found a loaded Glock 29 with a laser, an extended magazine and a switch, and a loaded Glock 19 with a 50-round drum magazine and a defaced serial number in the vehicle that he had been driving. At the time of his arrest, Dukes was wearing a necklace alleged to be valued at approximately $90,000 that was stolen during an armed robbery in New York.[2]

Beyond committing these crimes, Dukes additionally has shown a disregard for court orders. There currently are two outstanding warrants for his arrest, issued by two different jurisdictions. One of these warrants relates to his failure to appear in Wisconsin for charges that include carrying a concealed weapon—yet another occasion on which he is alleged to have unlawfully possessed a firearm.

The government has reviewed the letters submitted on Dukes' behalf, see ECF No. 32-1, and notes that while he is fortunate to have such love and support, it is clear that the person described therein is wholly inconsistent with the individual whose criminal record reflects

---

[2] On December 15, 2023, Dukes was denied pre-trial release and had been detained in DuPage County, Illinois prior to his transfer to the Eastern District of New York in connection with the instant case. Without any legal citation or factual argument, Dukes requests that he be credited for his period of incarceration in Illinois on those charges prior to his transfer to the Metropolitan Detention Center ("MDC"). Def. Mem. 15. There is, however, no basis to award him credit for time in state custody for an entirely separate course of illegal conduct.

he menaces the communities in whichever state he enters. Moreover, while Dukes points to his efforts to support children in his community, see Def. Mem. 13–15, his submission notably makes no mention of his failure to support his own biological children, see PSR ¶ 76 (noting the tens of thousands of dollars Dukes owes in child support).

While Dukes' submission includes a lengthy discussion of the conditions both before and during his incarceration at MDC, see Def. Mem. 7–13, he conveniently makes no mention of his own contribution to those conditions—namely, his possession of a contraband cellular telephones just weeks before his sentencing in this case. Specifically, on October 1, 2024, MDC officials located an iPhone concealed within Dukes' bed, PSR ¶ 79, and it is hard to imagine that this was the first contraband device he possessed, as opposed to just the first to be found during his detention. The danger posed by contraband cellular telephones cannot be overstated, as such devices can be used to facilitate serious criminal acts from within correctional institutions, from arranging escapes to coordinating kidnappings to tampering with witnesses. See, e.g., United States v. Blake, 288 F. App'x 791, 794 (3d Cir. 2008) (noting that "the risks presented when inmates possess cell phones. . . are patent," to include "notify[ing] someone on the outside when they're traveling," "intimidat[ing] witnesses," and "try[ing] to send someone after [an] employee" (internal quotation marks omitted)); Green v. Keyser, 2017 WL 5125533, *11 (S.D.N.Y. Nov. 1, 2017) (explaining that "cell phones [in correctional facilities] would allow a number of things to occur that would present a risk, [including] an escape plan, injury, or carrying on criminal activity from inside the institution" (internal quotation marks omitted)). Indeed, as one district court explained, "[t]he potential for criminality is large" and includes "orchestrating assaults on other inmates, planning contraband drug sales within the prison, ordering the transfer of drug proceeds in outside accounts, surveillance of other inmates, carrying out a criminal conspiracy, and doing all of the above while avoiding detection by prison guards." United States v. Garibay, 2015 WL 468404, *3 (S.D. Cal. Feb. 3, 2015). Moreover, the majority of Dukes' submission on this point includes generic representations of the conditions at MDC—included nearly verbatim in similar submissions made in other cases—rather than a focus on how any such how conditions have affected him personally. See United States v. Idris Dayo Mustapha, No. 23-CR-440 (E.D.N.Y. May 1, 2024), Sent'g Tr. 33–34 (noting that Court is "not going to be convinced by general descriptions of the conditions at the facility or in the BOP system writ large that a variance is warranted for any particular defendant; rather, I am looking at how those conditions have affected the [] conditions of the incarceration experienced by this defendant.").

Dukes argues that his difficult childhood—including exposure to violence and crime at a young age—merits a sentence below the applicable Guidelines range. Def. Mem. 13–14; see also ECF No. 32 at 5–9. However, the Guidelines themselves caution against such consideration in explicitly stating that "lack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing are not relevant grounds in determining whether a departure is warranted." U.S.S.G. § 5H1.12 (emphasis added). While the government does not minimize the challenges that Dukes has faced, those challenges do not mitigate the need for a significant term of imprisonment given his history and characteristics as described above. There is nothing unusual or noteworthy in Dukes' background that would excuse or justify his crime, and certainly not any that would override the importance of punishing firearms offenses, which, as noted above, are a scourge in our communities.

7

### 3. The Need to Afford Adequate Deterrence

A significant term of imprisonment also is necessary to afford both specific and general deterrence. See 18 U.S.C. 3553(a)(2)(B); cf. United States v. Davis, No. 08-CR-332 (JBW), 2010 WL 1221709, at *2 (E.D.N.Y. March 29, 2010) (emphasizing that, pursuant to § "3553(a)(2)(B) there are two major considerations: specific and general deterrence").

For one, a substantial incarceratory sentence is necessary because Dukes has proven himself to be undeterred by his prior convictions or by prior incarcerations. See United States v. Mishoe, 241 F.3d 214, 220 (2d Cir. 2001) (discussing the need for longer sentences for those with prior convictions whose conduct was not deterred). Indeed, his 2022 arrest and initial period of pre-trial detention in this case clearly failed to deter him from criminal conduct, as not long after he once again was found in possession of deadly weapons. The fact that Dukes was arrested in Illinois on firearms charges approximately one year after his release from MDC in connection with the Complaint plainly belies his claim that "[t]his case marks the first time that [he] has spent more than two days in an adult correctional facility, and he is dedicated to never finding himself in this scenario ever again." Def. Mem. 17. His own actions speak louder than hollow words conveniently made in advance of sentencing.

Moreover, in light of the local interest surrounding this case given Dukes' career as a professional rapper, others surely will notice what repercussions follow a conviction for illegal firearms. This is even more important given Duke's reliance on his status as a professional rapper to justify his possession of an illegal machinegun. The Court, therefore, should send the message to Dukes and to the public that such conduct will result in a substantial loss of liberty.

### 4. The Need to Avoid Unwarranted Sentencing Disparities

Dukes argues that a sentence below the applicable Guidelines Range is appropriate based on the median sentence of 19 months' imprisonment for "49 individuals in criminal history category II sentenced in the Eastern District of New York for firearms offenses primarily under U.S.S.G. § 2K2.1" between 2015 and 2023. Id. at 18. This argument fails for several reasons. First, this average is obviously above the sentence he requests. Second, while he chooses to highlight data for this district alone, it is well established that the appropriate inquiry under § 3553(a)(6) considers "nationwide sentencing disparity among similarly situated defendants." United States v. Kanagbou, 726 F. App'x 21, 25 (2d Cir. 2018) (emphasis added). The government's requested sentence of 27 months' imprisonment would actually serve to avoid unwarranted sentencing disparities among similarly situated defendants. See 18 U.S.C. § 3553(a)(6). Over the past three fiscal years, for offenders who—like Dukes—fall within Criminal History Category II and were sentenced pursuant to § 2K2.1, the average imprisonment length was 27 months, and the median imprisonment length was 32 months.[3]

---

[3] This data was obtained through the United States Sentencing Commission's Interactive Data Analyzer, which is available at https://ida.ussc.gov/analytics/saw.dll?Dashboard.

IV.     Conclusion

        For the reason sets forth above, the government respectfully requests that the Court impose a term imprisonment of 27 months, followed by a term of supervised release.

Respectfully submitted,

BREON PEACE  
United States Attorney

By:    /s/_____  
      Gilbert M. Rein  
      Rebecca M. Schuman  
      Assistant U.S. Attorneys  
      (718) 254-7000

cc:     Clerk of Court (NRM) (by ECF)  
       Counsel of Record (by ECF)